# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GEORGE R. MUNOZ,

        Plaintiffs,

   vs.

CALIFORNIA BUSINESS BUREAU, INC.,

        Defendant.

_____/

Case No. 1:15-cv-01345-BAM

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

ORDER SETTING STATUS CONFERENCE
DATE: December 1, 2016
TIME: 8:30 a.m.

(Docs. 14, 17)

This case arises out of actions taken by Defendant California Business Bureau, Inc. in an attempt to collect payments from Plaintiff George Munoz on unpaid hospital bills. In a Complaint filed on September 2, 2015, Plaintiff alleges violations of the federal Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1692p, and California's related Rosenthal Fair Debt Collection Practices Act ("Rosenthal" or "RFDCPA"), Cal. Civ. Code §§ 1788-1788.32. (Doc. 1).  Before the Court are the parties' cross-motions for summary judgment.[1]  On September 16, 2016, Defendant California Business Bureau, Inc. ("Defendant" or "CBB") filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposed the motion, and also filed a cross-motion for summary judgment on all of his claims.  (Docs. 16, 17).  Both parties later filed corresponding reply briefs.  (Docs. 20, 22).  The Court heard oral argument on October 21, 2016. Counsel Jessica Dorman and Crosby Connolly appeared on behalf of Plaintiff.  Counsel Franklin Love

[1]    The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 13, 14).  For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Doc. 15).

1  appeared on behalf of Defendant.  Having considered the moving, opposition and reply papers and the

2  parties' arguments, Defendant's motion for summary judgment shall be DENIED and Plaintiff's

3  motion for summary judgment GRANTED.  (Docs. 14, 17).

4                              **BACKGROUND**

5        The facts giving rise to Plaintiff's FDCPA and RFDCPA claims are essentially undisputed.[2]

6  Sometime prior to 2014, Plaintiff George R. Munoz sought medical treatment at the Community

7  Medical Center in Fresno, California.  Doc. 14-2 (Joint Statement of Undisputed Facts ("JSUF") 2).

8  As a result of this medical treatment, George R. Munoz and his wife, Amelia Munoz, incurred

9  multiple consumer debts ("the debts").  JSUF 3.  Plaintiff fell behind on his payments of the debts.

10 JSUF 4.  The debts were assigned to debt collector Defendant California Business Bureau, Inc.

11 ("CBB") for collection.  JSUF 5.

12       On February 3, 2015, CBB sued Plaintiff for these obligations in California state court in the

13 amount of $2,738.09, plus fees and interest.  JSUF 6, Exh. A.  Plaintiff hired legal counsel to represent

14 him as to the debts.  JSUF 7. On June 24, 2015, Plaintiff agreed to settle the debts through a stipulated

15 settlement agreement approved by Plaintiff's legal counsel.  JSUF 8.  The settlement agreement

16 stipulated that the balance owed by Plaintiff would be $3,042.49, all inclusive of attorneys' fees and

17 costs.  The settlement amount was to be paid as follows: $2,000 due on or before June 30, 2015 and

18 the remaining $1,042.49 would be paid in monthly installments of $200.00 per month due on the 30th

19 day of each month commencing on July 30, 2015.  JSUF 9, 11.

20       In compliance with the stipulated settlement agreement, Plaintiff paid Defendant $2,000 prior

21 to the June 30, 2015 deadline.  JSUF 11.  A month later on July 20, 2015, Defendant mailed a letter

22 directly to Plaintiff indicating that the "total due," and the "current balance" was $1,945.44, including

23 attorney's fees and interest.  JSUF 13; and Exh. E.  In response to the letter, Plaintiff mailed Defendant

24 a payment for $210.00.  JSUF 16.  The following month, Defendant sent another payment letter to

25 Plaintiff.  This August 18, 2015, letter detailed that Plaintiff owed: "$832.49" in "Principal;"

26 "$355.95" in "Interest;" and $547.00 in "Atty Costs" for a "Total Due" of $1,735.44.  JSUF 19.

27

28
---
[2]        These facts are taken from the parties' joint statement of undisputed facts (Docs. 14-2, 17-5), and from other parts of the record that the Court has deemed undisputed after considering all of the parties' arguments and objections.

1    Plaintiff again sent Defendant a payment for $210.00 on August 21, 2015.  JSUF 21.

2         Plaintiff initiated this action in this Court on September 2, 2015.  Plaintiff's Complaint alleges

3    that Defendant violated subsections 1692c(a)(2) and 1692e(2)(A) of the FDCPA and subsection

4    1788.17 of the RFDCPA by sending Plaintiff the two payment demand letters while Plaintiff was

5    represented by counsel.   (Doc. 1).   Plaintiff further alleges that the two letters unlawfully

6    misrepresented the amount of the debt Defendant was legally allowed to collect based on the

7    settlement agreement.  (Doc. 1).  Both parties move for summary judgment pursuant to Rule 56.

8                         **THE PARTIES' POSITIONS**

9         **A.      Defendant's Motion for Summary Judgment**

10        Defendant contends that it is entitled to summary judgment on both causes of action because:

11   (1) Plaintiff lacks standing to bring this suit because he fails to demonstrate actual damages; (2)

12   Plaintiff's claim is not subject to the FDCPA or the RFDCPA; (3) Defendant did not have actual

13   knowledge that Plaintiff was represented by an attorney; and (4) Defendant did not make a false or

14   misleading representation of the amount owed. (Doc. 14).

15        **B.      Plaintiff's Motion for Summary Judgment**

16        Plaintiff moves for summary judgment arguing that: (1) Defendant knew he was represented

17   by an attorney when it sent the payment letters; and (2) Defendant misrepresented the amount of the

18   debt owed all in violation of the FDCPA and RDFCPA. (Doc. 17).

19        **C.      Evidentiary Objections**

20        In opposition to Defendant's motion for summary judgment, Plaintiff moves to strike the

21   entirety of Defendant's declarations from Franklin Love, counsel for CBB, and Lawrence Oropeza, an

22   employee for CBB.  (Docs. 14-9 and 15-3).  Defendant's declarations attempt to present evidence of

23   patterns and practices in the debt collection industry.   Plaintiff argues these declarations should be

24   stricken on the grounds that they are based on inadmissible hearsay and speculation.  (Doc. 16 at 17).

25   Plaintiff's objections do not need to be addressed as the Court does not rely on Defendant's

26   declarations in ruling on these motions. Regardless of the industry customs, evidence of a specific

27   internal practice by CBB is insufficient to override the plain language of the FDCPA and the

28   RFDCPA.  Because the Court disregards most of the material in question, to a great degree, the motion

3

may be denied as MOOT. However, to the extent the Court has considered any of the information in these declarations; the Court overrules Plaintiff's evidentiary objections and finds he suffers no prejudice as a result.

## LEGAL STANDARDS

### 1.    Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## 2.    Legal Standard for FDCPA and RFDCPA Cases

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress passed the FDCPA in light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" that it found "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996) (citing 15 U.S.C. § 1692(a)). "[T]he FDCPA should be construed liberally to effect its remedial purpose." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

The Rosenthal Act is California's version of the FDCPA, as it "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations. *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012); *see* Cal. Civ. Code § 1788 et seq. Accordingly, whether an act "violates the Rosenthal Act turns on whether it violates the FDCPA."

1    *Riggs*, 681 F.3d at 1100. Rosenthal Act violations and FDCPA violations are viewed identically.[3]

2    To prevail on a claim for violation of the FDCPA, a plaintiff must establish that (1) the

3    plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the

4    defendant is a debt collector, and (4) the defendant violated a provision of the FDCPA.[4]  *See Turner v.*

5    *Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004).   The FDCPA is a strict liability statute, so the debt

6    collector need not knowingly and intentionally violate its provisions, though intent is relevant to

7    determination of damages. *Clark*, 460 F.3d at 1175.

8    In considering whether a statement in a debt collection communication violates the FDCPA,

9    courts apply the "least sophisticated debtor standard." *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d

10   926, 934 (9th Cir. 2007). "An FDCPA plaintiff need not even have actually been misled or deceived

11   by the debt collector's representation; instead, liability depends on whether the hypothetical 'least

12   sophisticated debtor' likely would be misled." *Tourgeman v. Collins Fin. Servs., Inc*., 755 F.3d 1109,

13   1117-18 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014). "The

14   standard is designed to protect consumers of below average sophistication or intelligence, or those

15   who are uninformed or naïve, particularly when those individuals are targeted by debt collectors."

16   *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (internal quotation marks

17   and citation omitted). "At the same time, the standard preserv[es] a quotient of reasonableness and

18   presume[s] a basic level of understanding and willingness to read with care." *Id.* (internal quotation

19   marks and citation omitted). "The FDCPA does not subject debt collectors to liability for 'bizarre,'

20   'idiosyncratic,' or 'peculiar' misinterpretations. *Id*. Whether a communication would confuse the least

21   sophisticated debtor is a question of law for the court to decide. *Id*. at 1061 & n.3 (citation omitted);

22   *see also Tourgeman*, 755 F.3d at 1118 (holding that the "least sophisticated debtor" standard "inquiry

23   is objective and is undertaken as a matter of law."); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir.

24   1997) (same).

25   Only false and misleading statements that are material will trigger a violation of the FDCPA;

26

27   [3]      If the Court finds that a party is entitled to summary judgment as a matter of law on the FDCPA claim, the Court
     must also grant summary judgment on the RFDCPA claim.

28   [4]      The parties do not dispute that Defendant is a debt collector under the FDCPA and likewise do not dispute that
     Plaintiff is a consumer for purposes of the FDCPA.

such statements must be "genuinely misleading" such that they "may frustrate the consumer's ability to intelligently choose his or her response to the collector's communication." *Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1033-34 (9th Cir. 2010); *see also Tourgeman*, 755 F.3d at 1119 ("[i]n assessing FDCPA liability," courts are concerned "with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response") (internal quotation marks and citation omitted).

### 3.      FDCPA and RFDCPA Liability

The FDCPA is a strict liability statute—it makes debt collectors liable for violations that are not knowing or intentional. *Reichert v. Nat'l Credit Sys*., 531 F.3d 1002, 1004-05 (9th Cir. 2008);  *see Clark v. Capital Credit & Servs., Inc.*, 460 F.3d 1162, 1176 & n. 11 (9th Cir. 2006). Under the strict liability framework, proof of a single FDCPA violation is sufficient to support summary judgment for the plaintiff. *Schwarm v. Craighead,* 552 F. Supp. 2d 1056, 1074 (E.D. Cal. 2008). Here, the specific FDCPA provisions at issue for liability purposes are § 1692c(a)(2) and § 1692e(2)(A).

### DISCUSSION

### A.      Article III Standing

Defendant first argues that this action cannot proceed because Plaintiff has not suffered an injury in fact, and thus, lacks standing to sue under Article III. The Court disagrees.

A federal court does not have subject-matter jurisdiction over a dispute unless the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635, *as revised* (May 24, 2016). An injury-in-fact is a concrete and particularized invasion of a legally protected interest. Id. at 1548. In *Spokeo*, the Supreme Court held that even lawsuits based on statutory violations require proof of a concrete injury, which is not met automatically by citing a statute that grants a right and authorizes a suit to vindicate that right. *Id.* at 1549. "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Id*.  In some circumstances, violation of a statutory procedural right will be enough to confer standing. *Id*. For some plaintiffs, alleging the harm identified by Congress in the statute is sufficient. *Id.*

Since *Spokeo*, the Eleventh Circuit and multiple district courts have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative.  *See Linehan v. AllianceOne Receivables Mgmt.*, 2016 U.S. Dist. LEXIS 124276 (W.D. Wash. Sept. 13, 2016) (collecting cases).  As the Eleventh Circuit recently recognized in *Church v. Accretive Health, Inc.*, -- F. App'x. --, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. July 6, 2016), violation of statutory rights is not a "hypothetical or uncertain" injury, but "one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." 2016 U.S. App. LEXIS 12414, 2016 WL 3611543, at *3.

The Court finds this approach persuasive and sound, and adopts it here. The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury. *See* 15 U.S.C. § 1692(a), (e); *accord Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) ("The 'injury in fact' suffered by Plaintiffs under the FDCPA is not any actual economic loss, but rather being subjected to the allegedly 'unfair and abusive practices' of the Collection Defendants.").

Here, Plaintiff alleges he was harmed by receiving misleading payment demands from Defendant who knew that Plaintiff had retained an attorney.   These are concrete harms defined and made cognizable by statute.  Those alleged violations are distinguishable from the "bare procedural violation" at issue in *Spokeo*.  136 S.Ct. at 1550. Plaintiff thus alleges a concrete and particularized injury in fact: Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.

Accordingly, the Court concludes that Plaintiff has standing.

**B.     Applicability of the FDCPA and RFDCPA**

Defendant next contends that Plaintiff may not proceed under either the FDCPA or its California counterpart, the RFDCPA, because both acts apply only with respect to loans made "primarily for personal, family, or household purposes." *See* 15 U.S.C § 1692a(5); Cal. Civ. Code § 1788.2(e).  Defendant explains that because Plaintiff's underlying debt was previously settled, the

primary purpose of the money at issue here is no longer an extension of credit for personal, family or household purposes, but is money owed on a contract – the stipulated settlement agreement. According to Defendant, the settlement agreement "transformed" the subject of the transaction from which the obligation to pay arose from a personal debt to a contractual obligation. (Doc. 14-1).

Plaintiff responds that the settlement agreement was merely a compromise reducing the amount owed. Citing the statutory definition of "debt" as defined by the FDCPA, Plaintiff argues that his negotiated settlement amount remains a debt as it is (1) "an obligation or alleged obligation of a consumer to pay money" (2) "arising out of a transaction in which" (3) "the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See* 15 U.S.C. § 1692a(5).

The resolution of this issue therefore turns on whether a debt reduced to a binding settlement agreement remains a "debt" under the FDCPA in order to trigger the FDCPA's remedial provisions. This Court holds that the settlement agreement did not recharacterize or transform the debt to a non-consumer debt.  Rather, the money owed by Plaintiff remains a consumer debt and therefore the reduced/settled debt amount falls within the ambit of the FDCPA.  In reaching this conclusion, the Court examines the plain language of the statute.

As with any question of statutory interpretation, the Court begins by examining the text of statute to determine whether its meaning is clear. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56, (1987) ("It is well settled that the starting point for interpreting a statute is the language of the statute itself."). Defendant, however, skips the textual analysis in its motion and instead relies on general contract principles to bolster its interpretation of the term "debt" as excluding debt amounts negotiated through a settlement agreement. Cal. Civ. Code. § 1625. Relying on the principles of contract formation is unnecessary here, however, because the language in the statute's definition of debt is plain. A "debt," the collection of which is governed by the FDCPA, is defined in the Act as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or

1    not such obligation has been reduced to judgment.

2        15 U.S.C. § 1692a(5).

3        There is no ambiguity which could lead to the Court to determine that Plaintiff's obligation to

4    pay for his medical services could be anything other than a consumer debt under this definition.  In

5    further reviewing the plain language, the Court agrees with the Seventh Circuit's determination that

6    the FDCPA's definition of "debt" is plain. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111

7    F.3d 1322, 1324 (7th Cir. 1997). As the *Bass* court noted, "the plain language of the Act defines 'debt'

8    quite broadly as 'any obligation to pay arising out of a [consumer] transaction.' In examining this

9    definition, [the Court] first focuses on the clear and absolute language in the phrase, 'any obligation to

10   pay.' Such absolute language may not be alternatively read to reference only a limited set of

11   obligations. . . . As long as the transaction creates an obligation to pay, a debt is created." *Bass*, 111

12   F.3d at 1325. "The definition of 'debt' is not beset with internal inconsistencies [or] burdened with

13   vocabulary that escapes common understanding." *Id.* (*quoting EEOC v. The Chicago Club*, 86 F.3d

14   1423, 1434 (7th Cir. 1996)). Thus, the definition of debt is clear on its face.

15       Moreover, the ordinary meaning of the term "transaction" is a broad reference to many

16   different types of business dealings between parties, and does not connote any specific agreement for

17   payment terms. *Bass*, 111 F.3d at 1325 (citing Webster's New World Dictionary 1509 (2d ed. 1986)

18   (defining "transaction" simply as "a business deal or agreement")). Therefore, when a debt collector

19   asserts that there is an obligation of a consumer to be paid, the protections of the FDCPA are triggered.

20   *See also Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) ("[Defendant's]

21   assertion that [plaintiff] is obligated as a result of a consumer transaction suffices to bring the

22   obligation within the ambit of the FDCPA.").

23       While Defendant argues that this case should be different because Plaintiff's allegations are

24   intertwined with the legally valid and binding contract agreed to by the parties, Defendant is mistaken.

25   (Doc. 14-1 at 2-3).  The settlement agreement does not change the root inquiry: did Plaintiff's hospital

26   visit, which is the underlying transaction at issue, oblige Plaintiff to pay money for his medical

27   services?  It did. The Court can find no support for the notion of dividing the transaction between the

28   initial obligation to pay the hospital fees and a negotiated agreement to pay the same underlying fees

10

at a reduced rate, and Defendant has not cited any authority to support that position.  Indeed –turn on head

　　　If anything, a review of the case law supports the idea that an unpaid debt obligation falls squarely within the ambit of the FDCPA.  *See  e.g. Posso v. Asta Funding Inc*., 2007 U.S. Dist. LEXIS 83741, 2007 WL 3374400 (N.D. Ill. 2007) (the FDCPA does not apply to actions taken by a debt collector when the debt has been fully paid and canceled)*;Winter v. I.C. Sys., Inc*., 543 F. Supp. 2d 1210 (S.D. Cal. 2008) (relying on *Posso* and finding plaintiff could not allege a FDCPA claim for "conduct occurring after he paid his debt in full" where allegation was based on defendant listing plaintiff's debt on a credit report).  Unlike *Posso* and *Winter*, Plaintiff's debt has not been canceled or paid in full and his debt obligation is still ongoing.  In this way, although the debt was subject to settlement agreement, the debt is outstanding and Defendant is prohibited from engaging in abusive conduct aimed at collecting on it.

　　　If the Court were to accept Defendant's argument, that a settlement agreement transforms the debt, this argument would turn the FDCPA on its head.  A debt collector then would be permitted to compromise an outstanding consumer debt, however minimally, and thereafter be exempted from the statutory preclusion of abusive debt collection practices.  This kind of end run around the statutory protections intended for consumers cannot be found in the language of the FDCPA or any case authority.

　　　The Court further finds that Defendant's "transformation" theory is inconsistent with the statutory language.  It is an "undisputed premise that the appropriate point in time for determining the character of a financial obligation is when the obligation arose." *See Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*, 2014 U.S. Dist. LEXIS 163448, 2014 WL 6657747 (N.D. Cal. Nov. 21, 2014) ("the relevant time is when the loan is made, not when collection is attempted").  In other words, the Court evaluates the nature of the debt at the time it arises rather than when it is to be collected. *Id.* Defendant does not and cannot dispute that the underlying transaction out of which the financial obligation arose was for medical services for personal purposes.

　　　Based on the Court's above analysis, Defendant fails to demonstrate that Plaintiff's case falls outside the scope of the FDCPA and the RFDCPA. Defendant's motion for summary judgment on this

issue is therefore DENIED.

### C.     Whether Defendant had Actual Knowledge of Attorney Representation

Pursuant to the FDCPA and RFDCPA, a "debt collector may not communicate with a consumer in connection with the collection of any debt [] if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."   *See* 15 U.S.C. § 1692c(a)(2).[5]   Courts have construed the "knowledge" requirement of 1692c(a)(2) to mean that a debt collector need possess "actual knowledge that [the plaintiff/debtor] was represented by an attorney." *See Beeks v. ALS Lien Servs.*, 2014 U.S. Dist. LEXIS 182078, 2014 WL 7785745, at *18 (C.D. Cal. Feb. 18, 2014)(*citing Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F.Supp.2d 986, 992 (D. Ariz. 2010); *See also* 15 U.S.C. § 1692c(a)(2) ("if the debt collector knows").   Plaintiff alleges that Defendant violated section 1692c(a)(2) and its state law counterpart when Defendant mailed letters on July 20, 2015 and August 18, 2015 to Plaintiff notifying Plaintiff that his "payment[s] of $200.00" were due.   (Docs. 14-7 at 2; 14-8 at 2).   Plaintiff claims these direct communications violated section 1692c(a)(2).   Based on the state court action occurring merely weeks earlier, Defendant actually knew Plaintiff to be represented by an attorney when it contacted him directly.

Defendant provides a detailed explanation as to why it did not have "actual knowledge" that Plaintiff was still represented by an attorney.   First, Defendant argues that it reasonably assumed that Plaintiff's attorney representation had terminated based on Plaintiff's failure to include language in the settlement agreement that attorney representation was ongoing. (Doc. 14-1 at 7).   Second, Defendant further disputes that Plaintiff's attorney remained involved in the case because: (1) Plaintiff and his attorney waived notice of default in the event Plaintiff failed to abide by the terms of the settlement agreement; (2) Plaintiff, and not his attorney, communicated with CBB to confirm that the two separate $210 payments had been received; (3) the settlement agreement vacated all hearings and therefore Plaintiff's attorney no longer had reason to appear in Plaintiff's case; and (4) because

---

[5]     The Rosenthal Act similarly prohibits communications with a represented debtor. Cal. Civ. Code § 1788.14(c) ("No debt collector shall . . . initiat[e] communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address . . . .").  Cal. Civ. Code § 1788.14(c).

Plaintiff, and not his attorney, made direct contact with CBB after the settlement agreement was signed, Plaintiff's conduct waived the right to an attorney.

In further support of its position that CBB lacked "actual knowledge" that Plaintiff was represented by an attorney, Defendant relies on the declarations of Franklin Love and Lawrence Oropeza.  Mr. Love, an attorney for CBB, states that on February 3, 2015, he filed the state court lawsuit on behalf of CBB for Plaintiff's unpaid hospital debt.  Declaration of Franklin Love ("Franklin Decl.") Doc. 14-11 at pg. 3.  Mr. Love declares that he has been drafting stipulated settlement agreements, like the one seen here, for over thirty-five years.  Franklin Decl. at pg 2.  He claims that based on his "35 years of experience and several thousand stipulated settlements," CBB's conclusion that Plaintiff "was not a represented party is correct."  Franklin Decl. at pg. 3.   Lawrence Oropeza declares that he has been employed by CBB for the past 25 years.  Declaration of Lawrence Oropeza ("Oropeza Decl."), Doc. 14-9 at 3.   During that time he has participated in countless lawsuits that have resulted in settlement.  Oropeza Decl. at pg 2.  Based on his years of experience, when a debtor "waived notice of default, and their attorney signed the approval of terms of the agreement," CBB concludes that the debtor is no longer represented by an attorney.  Oropeza Decl. at pg. 3. Mr. Oropeza further states that "over the past 15 years and countless stipulations the only time I have had any information that a debtor is a represented party for purposes of making the payments they agreed to make is when there is a provision in the agreement to notify the attorney." Oropeza Decl. at pg. 5.

Additionally, at oral argument, counsel for Defendant urged the Court to consider that after the parties signed the settlement agreement; "California Rule of Court, Rule 3.1385" mandated that all further hearings be vacated.[6]  Cal. Rules of Court, rule 3.1385(c)(3).  Defendant's Rules of Court theory is as follows: once the state court vacated the hearings, there were no more services left for Plaintiff's counsel to perform on the case.   Instead, because the agreement was signed, only one of two things could occur pursuant to the terms of the agreement: (1) Plaintiff would pay the reduced debt amount in full and the debt would be canceled or (2) Plaintiff would fail to pay the debt as

---

[6]      California Rules of Court, rule 3.1385 provides "on the filing of the notice of conditional settlement, the court must vacate all hearings and other proceedings requiring the appearance of a party and may not set any hearing or other proceeding requiring the appearance of a party earlier than 45 days after the dismissal date specified in the notice, unless requested by a party.

promised and Defendant would "apply for a Judgment *ex parte* without notice to [Plaintiff] and have a Judgment entered in the sum of $3,945.44 less any monies paid."  (Doc. 20 at 9).  Because the settlement agreement waives notice to Plaintiff or Plaintiff's counsel in the event of default, Defendant assumed that Plaintiff was no longer represented by his state court counsel. For those reasons, Defendant argues that it was reasonable for it to assume that Plaintiff was no longer represented.

The Court finds that Defendant's arguments miss the mark for several reasons.  First, Defendant cannot rely on the lack of formal notice to establish that it did not have actual knowledge of attorney representation. CBB concedes in Mr. Oropeza's declaration that its practice assumes that a party is not represented unless "there is a [written] provision in the settlement agreement to notify the attorney."  Oropeza Decl. at pg. 5.  Defendant repeats this internal policy in its opposition arguing that "if Plaintiff and his attorney wanted communications about payments to be directed to [Plaintiff's counsel], then don't sign a waiver and provide an instruction to communicate with [Plaintiff's counsel] or some other attorney."  (Doc. 20 at 11).  Yet this position finds no support in the plain language of the FDCPA.  Section 1692c(a)(2) does not require notice in writing that a consumer is represented by counsel; it simply provides that once a debt collector learns a consumer is represented, it must cease communicating directly with him. *Accord Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 272-73 (D. Conn. 2005) ("[I]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor."). Defendant's argument that it did not know that Plaintiff was represented due to Plaintiff's failure to submit written or formal notice is therefore unavailing.  Formal written notice is not required to trigger the broad remedial protections of § 1692c(a)(2) and the Court will not read such a requirement into the FDCPA.

Second, despite Defendant's claims to the contrary, there can be no genuine dispute that CBB knew Plaintiff was represented with respect to this debt. Plaintiff's counsel represented Plaintiff and filed an answer in the state court case that included his "email address, mailing address, and telephone number." *See* 15 U.S.C. § 1692c(a)(2); (Doc. 14-4, pg. 2). Defendant later signed a settlement agreement, approved by Plaintiff's counsel, on July 2, 2015. On July 20, 2015, merely eighteen days later, Defendant sent Plaintiff a letter titled "this is an attempt to collect a debt by a debt collector and

14

any information obtained will be used for that purpose."  (Doc. 14-7 at 2).  In reality, Defendant is not challenging that it had actual knowledge that Plaintiff was represented; without dispute, Defendant knew Plaintiff was represented as to this debt. Instead, without providing support from any binding law, Defendant asks the Court to infer that an exception to actual knowledge exists where a party signs a settlement agreement settling a debt.  If the Court were to infer this exception, such a result would render meaningless the policy underlying the FDCPA to protect consumers from unwanted communications by debt collectors. Certainly, allowing a debt collector to simply claim that it assumed that representation ended with respect to a particular debt would directly contradict the FDCPA's broad remedial purpose.[7]

Indeed, the only exceptions that Section 1692c(a)(2) makes to the requirement that a debtor be contacted through counsel are where (1) the attorney fails to respond within a reasonable time; and (2) the attorney consents to the debt collector's direct communication with the client. 15 U.S.C. § 1692c(a)(2). If Congress also intended to make an exception that a debt collector may contact a debtor in cases where a Court proceeding underlying the debt is concluded, it could have added a third exception. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co*., 446 U.S. 608, 616-17(1980).  Had Defendant first contacted Plaintiff's counsel, without a sufficient response within a reasonable time period, Defendant would then be free to assume the termination of representation and contact the consumer directly. *See Graff v. Hunt & Henriques*, 2008 U.S. Dist. LEXIS 65355 (N.D. Cal. Aug. 25, 2008) (under section 1692c(a)(2) Court held that a reasonable trier of fact could conclude that Plaintiff's attorney, who failed to respond to a debt collector's letter for ten days and failed to file in answer in state court resulting in default judgement, failed to respond to the "creditors letter within a reasonable period of time).  On these undisputed facts, Defendant knew Plaintiff was represented and that knowledge did not terminate as a result of the settlement.

The Court is also not persuaded by Defendant's argument that the California Rules of Court

---

[7]     While Defendant submitted declarations that Defendant's long standing custom and practice has been to contact represented debtors directly after a stipulated settlement, that custom and practice is inconsistent with the broad language of the FDCPA.

terminated any "actual knowledge" of representation.  There is nothing in the FDCPA that remotely indicates that attorney representation terminates when a hearing related to the debt is vacated.  The FDCPA relates attorney representation to the existence of the underlying debt.   15 U.S.C. § 1692c(a)(2) ("if the debt collector knows the consumer is represented by an attorney with respect to such debt.").  Any vacated hearings related to the underlying debt certainly did not cancel the debt and therefore a reliance on state court procedures to override the clear and unambiguous language of the FDCPA is inapposite.

Moreover, while California Rule of Court 3.1385(c) vacated all hearings, the settlement agreement also included language that in the event of dismissal the Court would retain jurisdiction to enforce the agreement. Although hearings are vacated after a notice of settlement is filed, Rule 3.1385(b) requires parties to file their dismissal within "45 days after the date of settlement of the case." Cal. Rules of Court, rule 3.1385(b).  Ostensibly, this is because a litany of complications can arise between a good faith settlement and the final disposition of a case. Courts are often required to intervene after settlement agreement in order to interpret disputed terms of the settlement agreement. Those proceedings undoubtedly require the participation of the attorneys who drafted the settlement agreement. Therefore, Defendant's effort to convince the Court that Rule 3.1385 eliminates the need for continued attorney representation when the settlement agreement explicitly contemplates the need for further proceedings is unpersuasive.

Finally, several courts construing Section 1692c have held that the filing of an underlying lawsuit between a consumer and a debt collector is sufficient to put the debt collector on notice that a plaintiff is represented with respect to that debt.  For example, the Northern District in *Camacho* squarely rejected a debt collector's argument that the consumer failed to advise the debt collector that his attorney representation was ongoing after an underlying lawsuit was filed. *Camacho v. Jefferson Capital Sys., LLC*, 2015 U.S. Dist. LEXIS 72030, 2015 WL 3454070 (N.D. Cal. May 29, 2015).  *In Camacho*, after Plaintiff defaulted on a personal debt the debt was assigned to a debt collector who filed a state court action to collect the debt. *Camacho,* 2015 U.S. Dist. LEXIS 72030, *3 (N.D. Cal. May 29, 2015). Plaintiff retained an attorney who appeared in the case shortly before the state court action was dismissed. *Id.* A month later, the debt collector sent collection letters directly to Plaintiff.

*Id.*  Plaintiff filed suit in federal court claiming that these letters were sent directly to him in violation of the FDCPA and Rosenthal Act prohibitions on direct communication with a debtor who the debt collector knows to be represented by counsel.  *Id.* at *9.  The debt collector moved for summary judgment arguing that Plaintiff failed to notify Defendant that Plaintiff's attorney representation was ongoing.  *Id.* at *10. The Court disagreed and held that Defendant was not entitled to summary adjudication because Plaintiff's attorney's participation in the state court action was sufficient to alert the debt collector that Plaintiff was represented by counsel with respect to his consumer debt.  *Id.* at *11.

Similarly, in *Goins v. JBC & Assocs.*, 352 F. Supp. 2d 262, 272-73 (D. Conn. 2005), the Court held that a debt collector's knowledge that a debtor was represented with respect to a debt in a prior legal action was sufficient to demonstrate that the debt collector knew that a debtor was represented. 352 F.Supp.2d 262 at 273.  There, a debt collector violated Section 1692c(a)(2) by contacting a debtor directly, after the  debtor had previously filed a lawsuit concerning the debt  against the debt collector. This, the Court held, conveyed clear knowledge that an attorney represented Plaintiff.  *Id.*

As set forth above, Defendant had actual knowledge of Plaintiff's attorney representation. Defendant's communications therefore violated Section 1692c(a)(2) of the FDCPA, and thus violated Sections 1788.14(c), 1788.17 when it communicated directly with Plaintiff about debt at issue here. The Court therefore DENIES Defendant's motion for summary judgment and GRANTS Plaintiff's motion for summary judgment for violation of Sections 1692c(a)(2) of the FDCPA and 1788.14(c) and 1788.17 of the RFDCPA.

### D.   Whether Defendant Misrepresented the Amount of Debt Owed

Plaintiff and Defendant each move for summary judgment on the question of whether Defendant violated 15 U.S.C. § 1692e by representing the pre-settlement amount due in its July 20, 2015 and August 18, 2015 demand letters. Plaintiff contends that the letters sent by CBB materially misrepresent the amount owed under the settlement agreement. According to Plaintiff, the content of the July 20, 2015 letter falsely represented that the "Total Due" as of that date was $1,945.44. This letter referred to this $1,945.44 as the "Current Balance," or "Total Due." However, the amount actually owed by Plaintiff as of July 20, 2015 was $1,042.49—$902.95 less than the amount

Defendant represented as the "Current Balance," or "Total Due." Plaintiff explains that as a part of the settlement agreement, the parties agreed that the amount to be paid by Plaintiff as a compromise of the dispute was $1,042.49.

In response, Defendant contends that the payment letters were not misleading because the "$1,945.44" was the current balance owed by Plaintiff.  While the parties entered into an agreement that Plaintiff could pay less than the agreed-upon amount, Plaintiff was still responsible for the full "$1,945.44" owed if he failed to comply with the terms of the settlement agreement. "If Plaintiff failed to heed either courtesy notice, an *ex parte* application for Judgment would have left [Plaintiff] with a Judgment balance precisely as stated in each of the two letters."  (Doc. 21 at 4).

Pursuant to 15 U.S.C. § 1692e(2), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes the "false representation of the character, amount, or legal status of any debt." Section 1788.17 of the RFDCPA provides parallel liability under state law. In this circuit, a debt collector's liability under § 1692e of the FDCPA is a question of law. *Arrow Fin. Servs., LLC*, 660 F.3d at 1061 (noting that objective, least-sophisticated-debtor analysis under FDCPA is a question of law); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) ("Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.[8]

Neither party cites any authority that is entirely on point. Defendant argues generally that it cannot be held liable for an FDCPA violation because "the entire sum of $3,915.44 was a current obligation when [the stipulated settlement agreement was] signed by Plaintiff."  (Doc. 14-1 at 5). This, Defendant argues is "absolutely consistent" with the settlement agreement signed by Plaintiff and his attorney. The fact that Plaintiff could pay less than the full balance was a "condition

---

[8]      For Plaintiff to prevail on his § 1692e claim, CBB's statements in the payment letter must be both misleading and material. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010) (concluding that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under § 1692e). Defendant makes passing reference to the argument that the distinction between the initial debt amount and the settled debt amount is a "hyper-technical" distinction and therefore immaterial for the purposes of the FDCPA.  (Doc. 20 at 14-15). The Court disagrees.  The allegations here involve the total amount of debt owed by Plaintiff—an amount allegedly inflated by $902.95. There is little question that a pay statement indicating that a consumer falsely owed over $900 would directly influence a "debtor's ability to intelligently choose his or her response concerning her debt. *Id.* at 1034.

subsequent" unavailable to Plaintiff at the time the letters were sent, because Plaintiff had yet to meet the terms of the agreement qualifying him for the reduced debt amount. (Doc. 14-1 at 5).

Defendant's argument overlooks the fact that (1) even correct information can lead to an FDCPA violation if it is misleading to the unsophisticated debtor, *see Arrow Fin. Servs, LLC*, 660 F.3d at 1062 ("[A] literally true statement can still be misleading[.]" (citations omitted)), and (2) the measure is not what Defendant intended or what the state court recognized, but how the least sophisticated consumer would react. *see id.* at 1064.

While the Court acknowledges Defendant's explanation that the reduced debt amount applied, if, and only if, Plaintiff first met the payment requirements agreed to in the stipulated settlement agreement; this theory could easily be understood another way. An unsophisticated debtor (or any debtor) could reasonably assume that by signing the settlement agreement, Plaintiff only owed the reduced amount. If Plaintiff failed to comply with the agreement, the agreement would be void and the amount originally due would be owed. In that scenario, the "$1,9545.44" was not the current balance due. Nonetheless, Defendant's complicated "condition subsequent" argument ultimately damns its defense with respect considering the "least sophisticated debtor." When evaluating potentially deceptive language, the Ninth Circuit requires courts to judge the language under the "least sophisticated debtor" standard. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982). It is implausible to infer that a least sophisticated debtor would understand the contract principles in the "civil code statutes of interpretation of agreements" relied on by Defendant. (Doc. 14-1 at 5). Further, "a debt collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Arrow Fin. Servs, LLC*, 660 F.3d at 1062.

Here, the letters do not indicate payment of the principal amount alone would satisfy the agreed upon debt. Specifically, the letter states the principal amount of the claim and then immediately thereafter states in pertinent part interest and attorney's fees owed. The plain language of the letter would lead the least sophisticated debtor to believe he could only satisfy the debt by paying all these costs, in addition to the principal amount of the claim. Whether Defendant's arguments are technically correct based on the legal wording of the settlement agreement provides little comfort to the Court. When viewed in the eyes of the least sophisticated debtor, the payment letter is misleading.

1    Moreover, payment letters that include an amount representing not only the actual debt owed

2    but the maximum payments that could be awarded against Plaintiff have been found to be misleading

3    in other courts. In *Veach v. Sheeks*, the Seventh Circuit noted that "the 'amount of debt' provision is

4    designed to inform the debtor . . . of what the obligation is, not what the final, worst-case scenario

5    could be.  316 F.3d 690, 693 (7th Cir. 2003). Therefore, Plaintiff is entitled to summary judgment on

6    his claim that Defendant's payment demand was misleading and in violation of 15 U.S.C. §

7    1692e(2)(A).

8        **E.    Damages, Costs, and Attorney's Fees**

9        In an action brought by an individual, a debt collector who fails to comply with any provision

10   of the FDCPA is liable to that individual in an amount equal to the sum of: (1) any actual damages

11   sustained as a result of such failure; (2) any additional damages as the court may allow, but not

12   exceeding $1,000; and (3) costs of the action, together with reasonable attorney's fees. 15 U.S.C. §

13   1692k(a). In determining the amount of liability, the court must consider, among other relevant

14   factors, the frequency and persistence of noncompliance by the debt collector, the nature of such

15   noncompliance, and the extent to which such noncompliance was intentional. 15 U.S.C. §

16   1692k(b)(1).

17       Under the RFDCPA, any debt collector that violates the Act with respect to any debtor is liable

18   to that individual in an amount equal to the sum of any actual damages sustained by the individual as a

19   result of the violation. Cal. Civ. Code § 1788.30(a). Any debt collector who willfully and knowingly

20   violates the RFDCPA with respect to any debtor is, in addition to actual damages sustained by the

21   debtor as a result of the violation, also liable to the debtor for a penalty in such amount as the court

22   may allow, which shall be no less than one hundred dollars ($100) nor greater than one thousand

23   dollars ($1,000). Cal. Civ. Code § 1788.30(b). A prevailing plaintiff in an action brought under the

24   RFDCPA is entitled to costs of the action and reasonable attorney's fees. Cal. Civ. Code § 1788.30(c).

25       Here, Plaintiff has provided no argument or evidence with respect to damages, costs, or

26   attorney's fees and Defendant does not address the issue. As a result, the Court lacks a basis to rule on

27   this issue. Therefore, the Court declines to determine, at this juncture, the amount of damages, costs,

28   and attorney's fees Plaintiff is entitled to as a result of Defendant's violations of the FDCPA and

RFDCPA. However, the Court will afford the parties an opportunity to address the matter at a status conference as set forth below.

## CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED as follows:

1. Defendant California Business Bureau Inc.'s motion for summary judgment is DENIED;

2. Plaintiff George Munoz's motion for summary judgment is GRANTED in full; and

3. The Court SETS a Telephonic Status Conference to discuss the issue of damages for December 1, 2016 at 8:30am in Courtroom 8 before Judge Barbara A. McAuliffe. Parties wishing to appear telephonically may do so by using the following dial-in number and passcode: dial-in number 1-877-411-9748; passcode 3190866.

IT IS SO ORDERED.

Dated:   __November 1, 2016__          ___/s/ Barbara A. McAuliffe___
                                        UNITED STATES MAGISTRATE JUDGE